United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PACIFIC STATES INDUSTRIES INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN ZURICH INSURANCE COMPANY,<br><br>Defendant. | Case No. 18-CV-04064-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS**<br><br>Re: Dkt. Nos. 15, 26, 27, 40, 46, 48 |

Plaintiff Pacific States Industries, Inc. ("Plaintiff") filed a lawsuit against Defendant American Zurich Insurance Company ("Defendant"). ECF No. 1 ("Compl."). Plaintiff asserts four causes of action arising from the workers compensation insurance Plaintiff obtained from Defendant. Before the Court is Defendant's motion to compel arbitration and stay the lawsuit. ECF No. 15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby GRANTS Defendant's motion to compel arbitration and stay the lawsuit.[1]

---

[1] As explained below, although only Defendant's motion to compel arbitration and stay the case is before the Court, the Court's decision to grant Defendant's motion to compel arbitration and stay the lawsuit requires the Court to deny as moot five other motions currently pending on the docket. ECF Nos. 26, 27, 40, 46, 48.

1
Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

## I. BACKGROUND

### A. Factual Background

Defendant is an Illinois corporation that engages in the business of writing workers compensation insurance policies. Compl. ¶¶ 2, 7. Plaintiff is a California lumber company. *Id.* ¶ 1. For the years 2004 to 2017, Plaintiff annually purchased workers compensation insurance policies from Defendant to cover Plaintiff's workforce. *Id.* ¶¶ 1, 8. Plaintiff decided not to renew its policy with Defendant for 2018. *Id.* ¶ 33.

#### 1. Workers Compensation Policy

The workers' compensation policies that Plaintiff purchased "applie[d] to bodily injury by accident or bodily injury by disease" sustained by Plaintiff's employees. ECF No. 17, Declaration of Bohdan Gursky ("Gursky Decl."), Ex. 2 at 12. Plaintiff assumed a per-claim deductible obligation of $750,000. Compl. ¶¶ 9–10. According to Plaintiff's Complaint, "[t]he terms and conditions of the policy documents . . . were not set forth in the policies themselves, but within a separate document," called the Paid Deductible Agreement ("Deductible Agreement"). *Id.* ¶ 10. Each year, Plaintiff and Defendant executed a Deductible Agreement. *See, e.g.*, *id.*, Ex. A (2011 Deductible Agreement); Ex. B (2012); Ex. C (2013); Ex. D (2014); Ex. E (2015); Ex. F (2016); Ex. G (2017).

#### 2. Deductible Agreements

The Deductible Agreements for each year outline the parties' "duties and obligations" related to Plaintiff's deductible payments. *Id.*, Ex. F at 1. Specifically, the Deductible Agreements concern "(1) the insurance coverage provided under the Policy(ies); and (2) the risk financing arrangement provided under the Program." *Id.* The Deductible Agreements provide that Defendant would "handle and pay the claims presented" and then bill Plaintiff for the deductible amount. *Id.*

In terms of risk financing, the Deductible Agreements require Plaintiff to provide Defendant a Letter of Credit with a collateral amount intended to secure Plaintiff's deductible payment obligations. *Id.* at 4. An additional document that the parties signed, titled

2

Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

"Specifications to Paid Deductible Agreement," memorializes the deductible amount—$750,000—Plaintiff had to pay for any claims under the workers compensation policy. *Id.* at 8. The Specifications also specified the amount of collateral Plaintiff was required to post in its Letter of Credit. *Id.* at 11. For example, for the 2016 policy year, Plaintiff was required to post $3.4 million in collateral, which consisted of the $2.9 million in collateral already on hand and a $500,000 adjustment. *Id.*

### 3. Arbitration Clause

The Deductible Agreements also outline the mechanism for resolving disputes between the parties. Under Section O (hereinafter, the "Arbitration Clause"), "[a]ny dispute arising out of the interpretation, performance, or alleged breach of this Agreement, shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and the following procedures." *Id.* at 6.

For policy years 2014 to 2017, the Deductible Agreements include a provision providing that "[b]y executing this agreement, [Plaintiff] acknowledge[s] that we provided you with a 'NOTICE OF DISPUTE RESOLUTION TERMS TO BE INCLUDED IN CERTAIN AGREEMENTS PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5' and that the terms of this Agreements reflect the final agreement . . . relating to the resolution of disputes under this Agreement." *Id.* at 1; *see also* Exs. D, E, G at 1.

### 4. Collateral Demand and Ensuing Disputes

Plaintiff alleges that prior to January 1, 2018, Defendant offered to renew Plaintiff's policy for 2018, and in so doing, proposed to increase Plaintiff's collateral obligation under the Letter of Credit by $150,000. Compl. ¶ 32. However, Plaintiff decided not to renew the policy for 2018 because of "frustrat[ion] at the increasing reserves under its policy" as a result of Defendant's alleged "improper claims handling." *Id.* ¶ 33. Plaintiff retained an obligation to pay for any losses under Defendant's policies and to provide collateral through the Letter of Credit. *Id.* ¶ 34. Plaintiff alleges that Defendant then demanded additional collateral of over $1 million. *Id.* ¶ 35.

3

Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

After Plaintiff "balked" at the payment, Defendant offered to decrease the request for additional collateral to $500,000. *Id.*

On June 26, 2018, Defendant demanded through counsel that Plaintiff provide "additional collateral in the amount of $1,078,819" by July 6, 2018. Compl., Ex. H. That number reflects $912,579 demanded for the years 2014 through 2017, with the remainder demanded for prior policy years. ECF No. 16, Declaration of Anne Stuckel ("Stuckel Decl.") ¶ 5 & Ex. 1.

Then, on July 6, 2018, Plaintiff filed this lawsuit against Defendant. Compl. Plaintiff's Complaint includes claims for (1) breach of contract, Compl. ¶¶ 37–41; (2) tortious breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 42–52; (3) violation of California Business & Professions Code § 17200, *id.* ¶¶ 53–61; and (4) declaratory relief. *Id.* ¶¶ 62–66.

On July 31, 2018, Defendant initiated arbitration. ECF No. 17, Ex. 4. Defendant initiated the arbitration "to recover $912,579 in collateral" arising from the policy years 2014 through 2017. *Id.* at 2.

**B. Procedural History**

On July 6, 2018, Plaintiff filed the Complaint against Defendant. Compl. On July 31, 2018, Defendant filed a motion to stay the lawsuit and compel arbitration. ECF No. 15 ("Mot."). On August 14, 2018, Plaintiff filed its opposition. ECF No. 20 ("Opp."). On August 21, 2018, Defendant filed its reply. ECF No. 23 ("Reply").

Then, on September 5, 2018, Plaintiff filed a motion to stay arbitration. ECF No. 27. On September 5, 2018, Plaintiff also filed a motion to shorten time for the Court to hear Plaintiff's motion to stay arbitration. ECF No. 26. On September 10, 2018, Defendant filed an opposition to Plaintiff's motion to shorten time on Plaintiff's motion to stay arbitration. ECF No. 28. On September 19, 2018, Defendant filed an opposition to Plaintiff's motion to stay arbitration. ECF No. 32. On September 26, 2018, Plaintiff filed its reply. ECF No. 33.

On October 9, 2018, Defendant filed an administrative motion for leave to file a surreply to Plaintiff's reply in support of Plaintiff's motion to stay arbitration. ECF No. 40. On October 15,

4

Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

2018, Plaintiff filed an opposition to Defendant's motion for leave to file a surreply. ECF No. 44.

On October 18, 2018, Plaintiff filed a second administrative motion to shorten time for the Court to hear Plaintiff's motion to stay arbitration. ECF No. 46.

On October 19, 2018, Plaintiff filed a motion to shorten time for Defendant to respond to Plaintiff's first set of requests for production of documents. ECF No. 47. On October 23, 2018, Defendant filed a response. ECF No. 49. On October 24, 2018, Plaintiff filed an administrative motion to shorten time for the Court to hear Plaintiff's motion to shorten time for Defendant to respond to Plaintiff's first set of requests for production of documents. ECF No. 50. On October 24, 2018, the Court denied Plaintiff's motion to shorten time for Defendant to respond to Plaintiff's first set of requests for production of documents, ECF No. 51, and denied as moot Plaintiff's administrative motion to shorten time for the Court to hear Plaintiff's motion to shorten time for Defendant to respond to Plaintiff's first set of requests. ECF No. 52.

On October 22, 2018, Defendant filed a motion to stay discovery pending the Court's resolution of Defendant's motion to compel arbitration. ECF No. 48. On November 5, 2018, Plaintiff filed a response. ECF No. 54. On November 13, 2018, Defendant filed its reply. ECF No. 55.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3).

Interpretation of arbitration agreements generally turns on state law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). However, the United States Supreme Court has stated that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute," and that "[t]he court is to make this determination by

5

Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The FAA creates a body of federal substantive law of arbitrability that requires a healthy regard for the federal policy favoring arbitration and preempts state law to the contrary. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-79 (1989) ("[T]he FAA must be resolved with a healthy regard for the federal policy favoring arbitration."). However, "state law is not entirely displaced from federal arbitration analysis." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir. 2001).

In deciding whether a dispute is arbitrable under federal law, a court must answer two questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts generally should apply ordinary state-law principles governing contract formation in deciding whether [an arbitration] agreement exists."). Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If the party seeking to compel arbitration establishes both factors, the court must compel arbitration. *See Chiron Corp.*, 207 F.3d at 1130. "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475

(9th Cir. 1991).

However, the FAA's savings clause "allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting 9 U.S.C. § 2). "The clause 'permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) (internal quotation marks omitted).

In addition, the parties can agree to delegate arbitrability—or "gateway" issues concerning the scope and enforceability of the arbitration agreement, and whether the dispute should go to arbitration at all—to the arbitrator. The United States Supreme Court has held that the question of "who has the power to decide arbitrability," the court or the arbitrator, "turns on what the parties agreed about that matter." *First Options*, 514 U.S. at 943. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70. "[Q]uestions of arbitrability may go to the arbitrator . . . when the parties have demonstrated, clearly and unmistakably, that it is their intent to do so." *Id.* at 80. The Ninth Circuit—along with "[v]irtually every circuit to have considered the issue"—has expressly held that "incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130 (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)).

## III. DISCUSSION

Before the Court is Defendant's motion to compel arbitration and stay this lawsuit. For the reasons explained below, the Court GRANTS Defendant's motion.

### A. Motion to Compel

Defendant contends that the Arbitration Clause in the Deductible Agreements requires Plaintiff to arbitrate certain claims in Plaintiff's Complaint. Specifically, Defendant contends that

7

Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

the Arbitration Clause requires arbitration of Plaintiff's claims related to the policy years 2014, 2015, 2016, and 2017. Mot. at 6 n.1. Defendant does not attempt to enforce the Arbitration Clause in the Deductible Agreements from the years 2013 and prior. Plaintiff raises several arguments for why the Arbitration Clause does not require arbitration, none of which is persuasive. The Court addresses Plaintiff's arguments in turn.

### 1. Whether the FAA Applies

The Court first addresses whether the FAA applies. The FAA applies to contracts in interstate commerce, and "an insurance company doing business across state lines engages in interstate commerce." *Humana Inc. v. Forsyth*, 525 U.S. 299, 306 (1999). Here, Defendant, an Illinois corporation, sold insurance to Plaintiff, a California corporation, and thereby engaged in business across state lines. Compl. ¶¶ 1, 2, 8.

Nonetheless, Plaintiff contends that the FAA does not apply. Plaintiff relies on the McCarran-Ferguson Act, which provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). Under that provision, state laws relating to insurance may, in some cases, "reverse preempt" federal statutes. *Ojo v. Farmers Grp., Inc.*, 600 F.3d 1205, 1208–09 (9th Cir. 2010). McCarran-Ferguson reverse preemption occurs if three requirements are met: "(1) the federal law does not specifically relate to insurance; (2) the state law is enacted for the purpose of regulating insurance; and (3) the application of federal law to the case might invalidate, impair, or supersede the state law." *Id.* In *Ojo*, for example, the Ninth Circuit held that the McCarran-Ferguson Act could reverse preempt the Fair Housing Act, and certified to the Texas Supreme Court a question of Texas law that would determine whether "application of the FHA to [the plaintiff's] case might invalidate, impair, or supersede" a Texas insurance statute. *Id.* at 1209–10.

Here, Plaintiff makes no attempt to identify how application of the FAA would impair a California statute, or even to identify a specific California statute. Instead, Plaintiff contends that

8

Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

the FAA is categorically "inapplicable to disputes arising under policies of insurance," Opp. at 6, a sweeping assertion that is unsupported by a cursory glance at McCarran-Ferguson case law. *See Humana*, 525 U.S. at 308 ("We reject any suggestion that Congress intended to cede the field of insurance regulation to the States[.]"); *see also Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1381 (9th Cir. 1997) (concluding that FAA applied to an interstate insurance policy and was not preempted because compelling arbitration would "not provoke conflict" with California law).

To the extent Plaintiff may suggest that application of the FAA impairs California Insurance Code § 11658, other courts have rejected that contention. *See Grove Lumber & Bldg. Supply, Inc. v. Argonaut Ins. Co.*, No. 07-CV-01396-AHS, 2008 WL 2705169, at *7 (C.D. Cal. (rejecting plaintiff's McCarran-Ferguson argument because § 11658 "does not address the topic of arbitration or provide a procedural framework for resolution of disputes"); *see also Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 47 N.E. 3d 463, 470–73 (N.Y. 2016) (same). As those courts explained, California Insurance Code § 11658 provides only that an insurer may not issue a workers compensation policy "unless the insurer files a copy of the form or endorsement" with the state insurance commissioner. Cal. Ins. Code § 11658(a). Thus, § 11658 does not even address arbitration or dispute resolution, and application of the FAA does not impair or supersede § 11658.

Nor does application of the FAA impair or supersede California Insurance Code § 11658.5, which expressly *contemplates* the use of arbitration. *See* Cal. Ins. Code § 11658.5(a) (requiring that an insurer intending to use arbitration must disclose that "choice of law and choice of venue or forum may be a jurisdiction other than California"). In *Quackenbush*, the Ninth Circuit hypothesized that "if a California law prohibited arbitration of disputes involving an insolvent insurer," application of the FAA to a dispute involving an insolvent insurer would impair that law. 121 F.3d at 1381. However, the Ninth Circuit held that because there was "no California law preventing arbitration" of the claims in *Quackenbush*, McCarran-Ferguson preemption did not apply. *Id.* Similarly, the penalty for noncompliance with California Insurance Code § 11658.5's

9
Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

disclosure requirements is "a default to California as the choice of law and forum for resolution of disputes arising in California," not a prohibition of arbitration. *Id.* § 11658.5(c). Therefore, requiring arbitration even if an insurer fails to comply with § 11658.5 does not impair the statute.

Thus, the Court concludes that the FAA applies to the parties' dispute. Next, the Court must "determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. Key Bank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (internal quotation marks omitted).

### 2. Whether the Arbitration Clause is Valid

The Court next addresses whether a valid agreement to arbitrate exists. Plaintiff contends that the Arbitration Clause in the Deductible Agreements is unlawful because Defendant failed to comply with California Insurance Code § 11658.5. Opp. at 8–10. The Deductible Agreements include a provision stating that by signing the Deductible Agreements, Plaintiff acknowledges that "[Defendant] provided you with a 'NOTICE OF DISPUTE RESOLUTION TERMS TO BE INCLUDED IN CERTAIN AGREEMENTS PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5.'" Compl., Ex. F at 1. Still, Plaintiff contends that Defendant has not produced evidence that Plaintiff signed a separate choice of law and forum disclosure form. Opp. at 9.

However, Defendant's compliance or noncompliance with § 11658.5 is immaterial to whether the Deductible Agreements are invalid. Noncompliance with § 11658.5 does not render an arbitration agreement invalid or unlawful. Rather, the consequence for noncompliance is "a default to California as the choice of law and forum for resolution of disputes arising in California." Cal. Ins. Code § 11658.5(c).

Plaintiff's citation to *Nielson Contracting v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096 (2018), is inapposite. In *Nielsen*, the California Court of Appeal concluded that a contractual provision delegating the question of arbitrability to an arbitrator was invalid because the insurance company had failed to comply with California Insurance Code Section *11658*, which is a different

10
Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

statute than the one Plaintiff relies upon here. *Id.* at 1113–14. The *Nielsen* statute, § 11658, requires an insurer to send a workers compensation policy to the state insurance commissioner before issuance, and renders it "unlawful for the insurer to issue any policy or endorsement" that the commissioner concludes is noncompliant. Cal. Ins. Code § 11658(b) (emphasis added). By contrast, § 11658.5 includes no such unlawfulness penalty, and Plaintiff provides no other argument for why the Arbitration Clause is invalid. Thus, the Court concludes that the Arbitration Clause is a valid agreement to arbitrate.

### 3. Whether the Agreement Encompasses the Dispute at Issue

The Court next addresses whether the Arbitration Clause encompasses the dispute at issue in Plaintiff's lawsuit. Defendant contends that the parties agreed to arbitrate the question of the scope of Defendant's obligations. Reply at 4. As explained, "questions of arbitrability may go to the arbitrator . . . when the parties have demonstrated, clearly and unmistakably, that it is their intent to do so." *Rent-A-Center*, 561 U.S. at 80. The Ninth Circuit—along with "[v]irtually every circuit to have considered the issue"—has expressly held that "incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130 (internal quotation marks omitted).

Here, the Deductible Agreements provide that disputes related to the Deductible Agreement "shall be settled by binding arbitration administered by the [AAA] under its Commercial Arbitration Rules." Compl., Ex. F at 6. In turn, the AAA's Rule 7 provides, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope*, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." ECF No. 23-2, Declaration of J. Young ("Young Decl."), Ex. 1 at 13 (emphasis added). The parties' incorporation of the AAA rules, including Rule 7, "constitutes clear and unmistakable evidence of the parties' intent" to arbitrate the question of the scope of the Arbitration Clause. Rent-A-Center, 561 U.S. at 80. The Court has already rejected Plaintiff's argument that Defendant's alleged noncompliance with California Insurance Code § 11658.5

11
Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

renders the Arbitration Clause, which includes the delegation provision, unlawful. *See Brennan*, 796 F.3d at 1132 (explaining that a Court must consider challenges to the validity of a delegation clause).

The Court next addresses a final potential obstacle to the delegation clause. While some circuits have adopted the rule that a delegation clause "applies only to claims that are at least arguably covered by the agreement to arbitrate," the Ninth Circuit recently stated that the "arguably covered" rule is "not universally followed." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 986 n.3 (9th Cir. 2017). In *Oracle*, for example, the Ninth Circuit cast doubt on the reasoning of a Sixth Circuit case employing the "arguably covered" rule. 724 F.3d at 1076. Out of an abundance of caution, the Ninth Circuit in *Portland General* concluded that it "need not take a side in this circuit split, or determine if we already have" because the delegation clause in *Portland General* "arguably covered" the claim at issue. 862 F.3d at 986 n.3.

The Court applies the same approach in this case and reaches the same conclusion. The Arbitration Clause requires arbitration of any dispute arising from "the interpretation, performance, or alleged breach" of the Deductible Agreements. Compl., Ex. F at 1. The Deductible Agreements state that under the Deductible Program, Defendant will "handle and pay the claims" arising from the policies and that Defendant "assume[s] a financial risk for which We may require Collateral." *Id.* In addition, the Deductible Agreement includes a section on the "Computation, Adjustment, Amendment and Replacement" of collateral. *Id.* at 4–5. Here, Plaintiff's Complaint alleges that Defendant breached the Deductible Agreements, Compl. ¶¶ 38 – 40, and breached the covenant of good faith and fair dealing with respect to Defendant's loss development factors, *id.* ¶ 47, which are set forth in the Deductible Agreements. *Id.*, Ex. F at 2. Plaintiff's claim for violation of California Business & Professions Code § 17200 is also predicated in part on Defendants' representations with respect to the "policies and Paid Deductible Agreements." *Id.* Thus, the Court concludes that the Arbitration Clause in the Deductible Agreement "arguably covers" Plaintiff's claims. The precise question of whether Plaintiff's

claims are encompassed by the Arbitration Clause, though, is for the arbitrator to decide. *See Portland General*, 862 F.3d at 986 n.3 (holding, after concluding that the arbitration clause arguably covered the claims, that it was "up to the [arbitrator] to decide whether the [plaintiff's] claim falls within the scope of the arbitration clause in the first instance").

The Court thus concludes that the Arbitration Clause in the Deductible Agreement is a valid agreement to arbitrate and that the arbitrator must decide whether the Arbitration Clause encompasses Plaintiff's claims.

### 4. Whether to Stay the Lawsuit

Having concluded that arbitration should be compelled, the Court must now consider whether to stay the lawsuit. Under Section 3 of the FAA, courts must "stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, (2011). When a court "determines that all of the claims raised in the action are subject to arbitration," the court "may either stay the action or dismiss it outright." *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Where plaintiffs assert both arbitrable and nonarbitrable claims, district courts have "discretion whether to proceed with nonarbitrable claims before or after the arbitration and [have] . . . authority to stay proceedings in the interest of saving time and effort for itself and litigants." *Wilcox v. Ho-Wing Sit*, 586 F. Supp. 561, 567 (N.D. Cal. 1984); *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (same).

"Where it is proposed that a pending proceeding be stayed, the competing interests which are affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (applying *CMAX* standard). "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to

result from a stay." *CMAX*, 300 F.2d at 268.

Defendant does not seek to arbitrate any of Plaintiff's claims arising from the policies predating 2014. Mot. at 9. Plaintiff contends that because "all aspects of all claims relating to the policy years 2004–13 will have to be litigated in court," the Court should not stay the lawsuit. Opp. at 14. However, Plaintiff's Complaint is not so easily divisible into potentially arbitrable and nonarbitrable claims. Plaintiff's Complaint does not specify that certain causes of action relate only to Defendant's conduct from 2004 to 2013, and that others relate only to Defendant's conduct from 2014 to 2017. For example, Plaintiff's breach of contract claim is premised on Defendant's alleged breach of "the policies and the Paid Deductible Agreements," but the precise policy years are not specified. *See* Compl. ¶¶ 38–40. Thus, were the Court to permit the lawsuit to continue, the Court's evaluation of Plaintiff's claims might necessarily touch on issues relating to policy years 2014 to 2017, which are questions that the arbitrator may decide are arbitrable.

The Court, in its discretion, finds that a stay of the lawsuit is appropriate because all of Plaintiff's claims concern questions that the arbitrator may conclude are arbitrable. Staying the lawsuit pending the arbitration will help clarify what claims and issues will remain for the Court to decide. For example, if the arbitrator decides that no aspects of Plaintiff's claims are arbitrable and that the Court should consider all aspects of Plaintiff's claims, it would waste judicial resources for the Court to have proceeded with the lawsuit only on "the aspects of all claims relating" to the policy years 2004 to 2013, as Plaintiff requests. It would also waste resources for the parties and the Court to litigate what portion of Plaintiff's causes of action arise from Defendant's conduct before and after 2014. Thus, a stay will help advance "the orderly course of justice." *CMAX*, 300 F.2d at 268; *see also Wilcox*, 586 F. Supp. at 567 (granting stay where arbitrator's decision was likely "to decide issues that will, at least, streamline subsequent proceedings" before the court); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (affirming district court's decision to stay lawsuit pending an arbitration that "might well decide issues which bear in some way on the court's ultimate disposition" of

14
Case No. 18-CV-04064-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE; DENYING AS MOOT ALL OTHER PENDING MOTIONS

nonarbitrable claims).

The Court therefore GRANTS Defendant's motion to stay Plaintiff's lawsuit pending arbitration.

### B. Other Pending Motions

Only Defendant's motion to compel arbitration is currently before the Court. However, the Court's decision to GRANT Defendant's motion to compel arbitration and stay the case affects five other motions pending on the case docket.

The Court's decision to compel arbitration and stay the lawsuit moots (1) Plaintiff's motion to stay the arbitration, ECF No. 26; (2) Plaintiff's first motion to shorten time for the Court to hear Plaintiff's motion to stay the arbitration, ECF No. 27; (3) Defendant's motion for leave to file a surreply to Plaintiff's reply in support of Plaintiff's motion to stay the arbitration, ECF No. 40; (4) Plaintiff's second motion to shorten time for the Court to hear Plaintiff's motion to stay arbitration, ECF No. 46; and (5) Defendant's motion to stay discovery pending the Court's resolution of Defendant's motion to compel. ECF No 48. The Court thus DENIES as moot those five motions.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to compel arbitration and stay the lawsuit and DENIES as moot all other pending motions. The parties shall notify the Court within seven days of the conclusion of receiving an arbitration ruling.

The Clerk shall administratively close the case file. This is an internal administrative procedure that does not affect the rights of the parties.

**IT IS SO ORDERED.**

Dated: November 21, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge